**In re R.E. TULL & SONS, INC., Debtor.**

**Bankruptcy No. 81–1–1519.**

United States Bankruptcy Court,
D. Maryland.

Feb. 17, 1983.

Nelson Cohen, Bethesda, Md., for Michael Fox Auctioneers.

Robert Zakroff, Washington, D.C., for debtor.

## MEMORANDUM UPON ORDER DENYING AUCTIONEER FURTHER COMPENSATION

PAUL MANNES and JAMES F. SCHNEIDER, Bankruptcy Judges.

This matter is before the court upon the petition of Michael Fox Auctioneers, Inc., for award and payment of auctioneer's commission and expenses. For the reasons set forth, the court declines to authorize any further compensation to the auctioneer in excess of the sum of $4,896.59 allowed by the order passed by Judge Mannes on September 16, 1982. This sum is the amount allowed as a commission under Rule 58 of the Local Rules of the United States Bankruptcy Court for the District of Maryland.

The debtor, R.E. Tull & Sons, Inc., was a large plumbing contractor with offices in Montgomery County, Maryland. A petition for involuntary bankruptcy was filed on November 12, 1981, and Robert Joel Zakroff was appointed interim trustee on December 3, 1981. An order for relief was entered on December 10, 1981. On January 20, 1982, the trustee filed an application to employ an auctioneer to sell inventory and equipment of the debtor. The trustee sought the appointment of Fox, as auctioneer. The form of order submitted by the trustee provided that the auctioneer be paid a commission of 10% based on the gross sales of the inventory and equipment of the debtor. That form was rejected by the court, and the commission was fixed by the court in accordance with the rules of this court. The order as passed by Judge Mannes provided that

"ORDERED, that Robert Joel Zakroff, Trustee, be, and hereby is, authorized to employ the firm of Michael Fox Auctioneers, Inc., and that said firm shall be paid a commission *in accordance with Local Rule 58* and to allow said auctioneer advertising and promotional costs of $4,994.00 as outlined in the proposal filed with this court." (Emphasis added.)

Thereafter, on February 5, 1982, the trustee filed a motion to increase the compensation of the auctioneer to an amount equivalent to 10% of the gross sales, alleging that the sale of the debtor's property would be labor intensive because of the many hours of set-up, phone call inquiries, inspections, and supervision of removal required. Judge Mannes denied that motion on February 5, 1982. The sale took place on March 4, 1982, producing a sales total of $116,555.50. Michael Fox Auctioneers, Inc., through its own counsel, moved on March 25, 1982, for reimbursement of out-of-pocket expenses of $4,590.61, commissions of $11,665.55, or, in the alternative, the commission as provided for under Local Rule 58, out-of-pocket expenses, and "reimbursement for labor charges in connection with setup and checkout of $3,350." On April 1, 1982, this court entered an order providing for the reimbursement of the out-of-pocket expenses of $4,590.61. The Trustee's Report of Sale filed April 12, 1982, reported gross proceeds of $116,555.50 and expenses of $9,687.28. On September 16, 1982, upon the trustee's application, the auctioneer was awarded his fee in accordance with Local Rule 58 in sum of $4,896.59. The order was without prejudice to an application to increase the auctioneer's commission.

Counsel for the auctioneer urges that his client is entitled to compensation above and beyond that stated in the Local Rules in that an award in compliance with Rule 58 would result in a loss to the auctioneer. Testimony was offered as to the rates of compensation in other districts for auctioneers in bankruptcy cases. Wm. Fox was called on behalf of the auctioneer to testify as to its expenses incurred in connection

with the sale. The witness testified as to the allocation of 230 man-hours that Fox assigned the rate of $15.00 an hour.

Rule 58 of the United States Bankruptcy Court for the District of Maryland provides as follows:

The following allowances [shall] be made to auctioneers in bankruptcy, viz:

For offering and selling real or leasehold property, each piece of parcel sold shall be deemed to be a separate sale:

A commission of five (5) percent of the sales price up to and inccluding $1,000.00, a commission of four (4) percent on the sales price exceeding $1,000.00 up to and including $5,000.00, a commission of three (3) percent on the sales price over $5,000.00 up to and including $10,000.00, a commission of two and one-half (2½) percent on the sales price over $10,000.00 up to and including $30,000.00, and commission of two (2) percent on the sales price over $30,000.00. In the event the property is withdrawn from sale, the auctioneer's fee shall be $25.00.

For offering and selling chattels, personal, the auctioneer making the sale be allowed ten (10) percent upon the proceeds of sale up to $10,000.00, five (5) percent upon all over $10,000.00 up to $50,000.00 and three (3) percent upon all over $50,000.00.

In chattel sales, the aforesaid allowance shall include the auctioneer's compensation for delivering the goods, and, *except for storage and transportation costs approved in advance by the Bankruptcy Judge, said allowances shall include all other expenses incurred by the auctioneer in connection with said sale in the way of cleaning and assembling the merchandise and exposing the same for sale, division into lots, etc., and whether for labor or otherwise.* Such allowances shall not, however, include the *advertising* costs authorized by the Bankruptcy Judge in connection with the case.

As to any sale, however, where the amount of the expected selling price or prices shall make the rates of compensation to the auctioneer called for in this Rule unreasonably high or unreasonably low, the Court may, upon good cause shown, *by special order at the time the sale is ordered,* fix the auctioneer's compensation for any such sale. (Emphasis added.)

As may be seen, the auctioneer's compensation under the Rule includes all other expenses incurred by the auctioneer in connection with the sale, whether for labor or otherwise. Furthermore, the Rule gives this court the power to change the rate of compensation by special order at the time the sale is ordered. It is quite clear that all of the costs described by the auctioneer are encompassed within the compensation schedule. This court is generally without power to change the schedule, unless it does so by special order at the time that the initial order for sale is ordered. Even if the rate caused a manifest injustice to the applicant, which the court specifically finds it does not in this case, once the order for compensation has been passed, the court ought not to change the rate of compensation without some showing of extraordinary circumstances beyond the contemplation of the applicant at the time the sale was ordered.

What is particularly troublesome to the court in this instance is the fact that the matter of a 10% fee was ruled upon by Judge Mannes at the time that he entered the order authorizing employment. If the auctioneer had any difficulty with the matter at that time, it should have either declined to go forward with the sale or pressed for reconsideration by the court before the sale took place. It may well have been that there were other auctioneers that would have been ready, willing, and able to go forward under the terms set forth in Rule 58. Once having received the order of the court to conduct the sale, the auctioneer will not be permitted thereafter to negotiate with the court as to its rate of compensation, the sale having taken place. While it is true, as counsel for Fox argues, the pre-Code "principle of strict economy" has been rejected, *See generally,* Miller and Cook, *A Practical Guide to the Bankruptcy*

Reform Act, pp 642.4–642.9, the fact remains that bankruptcy cases are to be maintained for the benefit of the debtors and creditors and not the professionals involved. *See also, Norton Bankruptcy Law and Practice,* § 11.43 (1981).

A reading of 11 U.S.C. § 328 also militates against the request of Fox. That section provides as follows:

> (a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, *if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions.* (Emphasis added.)

As may be seen, the terms and conditions in the hiring of Michael Fox Auctioneers, Inc., must be proven to have been improvident in light of unforeseen developments. There is no such allegation here. Finally, Bankruptcy Rule 606(c) provides:

> (c) *Compensation and Eligibility of Auctioneers and Appraisers.* No auctioneer shall be employed or appraiser appointed *except upon an order of the court fixing the amount or rate of compensation.* No officer or employee of the Judicial Branch of the United States or the United States Department of Justice shall be eligible to act as an auctioneer or appraiser. No residence or licensing requirement shall apply to an auctioneer employed or appraiser appointed under this rule. (Emphasis added.)

Once again, an important element of the bankruptcy law requires the rate of compensation to be fixed prior to the sale. ▋ The auctioneer may not, as is sought here, consent to be appointed, conduct the sale, and then seek to change its fee schedule, if the circumstances for the change can reasonably be anticipated prior to the sale. This would frustrate free and open competition among auctioneers. It would be of no benefit to the estate. Michael Fox Auctioneers, Inc., had the choice either of rejecting the employment when the court stated that it would adhere to the rates of the Local Rules or seek modification of the order prior to conducting the sale. This is the plain direction of the Bankruptcy Code and Rules, and nothing has been presented showing that there were any developments that could not have been anticipated and, in fact, were not anticipated at the time of the passage of the court's order on January 21, 1982.

An order will be entered in accordance with the foregoing memorandum.